INZER, Justice.
This is an appeal by the State Game and Fish Commission from an order of the Circuit Court for the First Judicial District of Hinds County sustaining a petition for a writ of mandamus to reinstate appellee, E. M. Byrd, to his former position as game warden, and to pay him his accumulated salary from October 1, 1964. A decision on two points urged on this appeal is controlled by our decision in Cannada v. Marlar, Miss., 185 So.2d 649, No. 43,873, decided on April 18, 1966, and not yet officially reported. We affirmed this case.
Appellant assigns as error the following:
The judgment of the lower court is against the overwhelming weight of the law and the evidence.
The lower court erred in holding that the appellee was not guilty 'of laches and in not dismissing this suit because of appellee’s laches in bringing same.
The lower court erred in not holding that there was a substantial compliance by appellants with Section 5851, Mississippi Code of 1942.
The court erred in not reducing the amount of judgment incommensurate with the earnings of appellee from the time of his dismissal to the trial of this cause.
Proof in this case establishes that on September 15, 1964, the appellee was an employee of the State Game and Fish Commission; he was a game warden stationed at Collinsville. Plis salary was $300 a month, and he had been employed by the Commission for twelve years and one month preceding this date.
Appellee received the first notice of the termination of his employment on the morning of September 15, 1964, when his supervisor, Mr. Welch, came by his home and said to him, “Well, I guess you know you was let out from the Commission?” Ap-pellee replied that he was not aware of his discharge and inquired of Welch as to why he was “let out.” Welch told him that he did not know. All that Welch knew was that he had been directed to come by ap-pellee’s home and pick up the equipment that belonged to the Commission. Welch informed appellee that perhaps Mr. John Camp, Director of the Commission, could inform him why he was “let out.” Ap-pellee then telephoned Mr. Camp and was advised that Camp did not know, but perhaps Mr. Carraway, the new Director, could tell him. Appellee talked to Mr. Carraway, and he was unable to inform him as to why he was “let out.” Later that same day appellee received a notice through the mail that he was discharged. The only reason given in the notice was “discharged.”
Appellee was an uneducated man, and he employed an attorney to write to the Commission requesting a hearing under the *921 provisions of Mississippi Code Annotated, sections 5841, 5851 (Supp.1964). His attorney wrote a letter to the Commission and requested that the director set a date for the hearing and that appellee he notified at least ten days prior to the date set for the hearing. The letter also requested a copy of any charges that had been filed with the Commission and the Governor in regard to appellee’s employment. On October 5, 1964, Mr. Carraway, as Director of the Commission, advised appellee’s attorney that a hearing was set for 11:00 a. m. on October 13, 1964. This letter did not inform appellee of any reason for his discharge. The attorney then representing appellee advised him that it would be entirely too expensive for appellee to pay him to come to Jackson for the hearing, and suggested that he employ counsel in Jackson. He recommended an attorney, and Byrd came to Jackson on October 12, but could not contact the attorney recommended. Appellee then sought the advice of former Governor Ross Barnett, who advised him to see Mr. Carraway and discuss the problem with him, which appellee did. Appellee requested that the hearing be postponed until a later date to give him an opportunity to get an attorney to represent him. He understood Mr. Carraway to say that the hearing would be postponed and that he would be notified as to the time for the hearing. Appellee also talked to Mr. Camp on this occasion, and neither Mr. Camp nor Mr. Carraway could inform him as to why he had been discharged. Several days thereafter appellee received a letter from Mr. Carraway in which he was advised that the Commission had established new rules and regulations for game wardens and that appellee did npt meet the qualifications. No mention was made that the Commission had held a hearing on October 13. This was the only information that appellee ever received as to why he was discharged. From that time on, appellee asserted every effort he could to be restored to his employment. He prevailed on many people who were friends of the Governor to intercede for him. The reports that he received were encouraging, and he thought that he would be restored to his employment up until only a few days before he filed this suit. In fact, about one week before suit was filed, a district supervisor for the Commission contacted him relative to his going back to work. Ap-pellee employed the attorneys now representing him some six months prior to the time that the suit was filed. Apparently, they delayed filing suit, thinking that the Commission would restore appellee to his employment. When the answer of the Commission was filed to the petition, it was discovered that the Commission had entered an order on its minutes on October 13, 1964, to the effect that a hearing had been set for appellee on,that day and that he did not appear. For this reason, the Commission considered the matter closed.
The circuit -judge found that no.written charges-had ever been filed with the Commission, nor had any written charges been given to appellee prior to the hearing set for October 13, 1964, and that such charges as were later furnished by the director were not sufficient to comply with the statute. The trial court held that the facts in this case did not justify the application of the Doctrine of Laches.
There is no merit in appellee’s contention that the judgment of the trial court is against the overwhelming weight of the law and evidence.
The next two assignments of error were decided contrary to the contention of the Commission in Cause No. 43,873, supra. Writing for the Court, Justice Patterson fully discussed the law relative to the Doctrine of Laches, and there is no need for futher discussion of this point. The trial court was not in error in refusing to apply the Doctrine in this case. Furthermore, we specifically held in that decision that sections 5841(c) and 5841 (d) of the Code apply to all employees, including game wardens of the Commission after twelve months of service. There was *922 not a substantial compliance with these sections.
The final assignment of error that the trial court was in error in not reducing the damages commensurate with the earnings of appellee since his discharge is without merit under the proof in this case. In the case of Poteete v. City of Water Valley, 207 Miss. 173, 42 So.2d 112 (1949), this Court quoted the following statement found in the case of Mengel Co. v. Parker, 192 Miss. 634, 7 So.2d 521 (1942), as follows :
‘When a defendant relies on matter in mitigation or reduction of damages the burden is on him to make the proof of the facts which will operate to bring the mitigation into effect as against the opposite party.’ In 15 Am.Jur. Damages, Sec. 331, p. 770, it is said: ‘In an action for damages the plaintiff has the burden of establishing the damages which result from the defendant’s tortious act or his breach of contract, but in so far as it may be contended that the damages might and should have been minimized by taking steps to reduce the resulting damages or prevent the accrual of damages, the burden of proof rests upon the defendant.’ * * * (207 Miss, at 182, 42 So.2d at 113)
The only proof in this record relative to appellee’s employment and earnings since his termination was that he owned a farm prior to the time he was discharged and that since that time, he had contracted to buy another farm. He testified that he had done some custom hay baling since that time. The Commission made no effort to require appellee to furnish a statement of his earnings from his farm or other sources since he was discharged from his employment. The Commission failed to meet the burden of proof on this issue. The trial court was not in error in refusing to reduce the damages.
The question of whether there existed sufficient cause for the discharge of ap-pellee is not before this Court on this appeal, and for this reason, we express no opinion relative to that feature.
For the reasons stated, the judgment of the circuit court must be affirmed.
Affirmed.
ETHRIDGE, C. J., and RODGERS, BRADY and PATTERSON, JJ., concur.